The Illinois 24th-Third Division is now in session. The Honorable Justice Margaret S. McBride is presenting. Good morning. Good morning, everyone. You may be seated. Saunders v. Orbitz. Will the attorneys that are going to actually present oral arguments step up to the podium and identify yourselves for the record? Yes, Your Honor. My name is Cynthia Morgan of Grant and Eisenhoffer. I'm appearing here today on behalf of the plaintiff appellants. I'm joined here by my colleague and local counsel, Bill Moore. All right. Good morning, Your Honor. Michael A. Warner on behalf of Defendant Apoe Orbitz Worldwide, LLC. All right. Good morning, Ms. Morgan, Mr. Warner. Each of you will have about 15 minutes to present oral argument. And from that, Ms. Morgan, you may save out some time for rebuttal. So with that, Mr. Warner, you may be seated. And Ms. Morgan, you may begin. Yes, Your Honor. And if I could, I'd just like to reserve about five minutes for rebuttal. Certainly. Thank you. Justices, counsel, may it please the Court. Your Honors, this case presents one overarching and central question for review here today. And that is whether an employee's claim against her employer for violation of the Illinois Human Rights Act sounds in tort. And I contend, Your Honors, that the answer to that question is no. HRA claims do not sound in tort. And because HRA claims do not sound in tort, HAVAS and Orbitz are not joint tort feasors under the Illinois Contribution Act. Orbitz is not entitled to a settle based off plaintiff's settlement with their own employer, HAVAS. Ms. Morgan, what's your definition of a tort? Yes. A tort is a common law cause of action. Typically, we see it as a negligent or negligent series of a tort. To address that, that it's a common law cause of action that's typically negligence or negligence in some form. Well, I think there are cases that find that there can be, there are statutes, Your Honors, that contemplate tort actions, like the Workers' Compensation Act, for instance. But the underlying causes of action with respect to the Workers' Compensation Act are negligence theories. They're personal injury claims that are brought under various theories of common law actions. Well, isn't it true that a tort is actually a civil wrong other than a breach of contract? It doesn't have to be negligence. That's correct. It's correct, Your Honor. Negligence is where we typically see it. But Human Rights Act cases are civil rights violations. They are not torts. And there is... Well, what really, what case would you rely on most for that claim? I think the Maskeovic, the Geis cases, point to that particular reading of the law, Your Honor. Why do you rely on that, Nicole? Well, in that case, Your Honor, they made a significant distinction between torts of common law, like battery and assault, and false imprisonment. Wasn't that a subject matter jurisdiction case? That case, Your Honors, was about preemption, essentially. Preemption and subject matter jurisdiction. Yes, correct. But there are other cases that have distinguished causes of action sounding in tort, and those that do not, for purposes of contribution. And that's Giordano, Harvard Builders, Robbie O'Frankel. Would you agree that there really isn't a single case in Illinois that actually says what you're saying? That a violation of Human Rights Act is not a tort? I agree that this is a matter of first impression in Illinois for these justices to decide. I disagree that there is not persuasive precedent in this court that would allow you to make the determination that the appellants are seeking here today. What if the definition becomes sort of what Justice Walker described, in which actually some of our cases say, and that is that a tort is a civil wrong in which liability can be determined either at law or equity? The Human Rights Act is a comprehensive statutory scheme that does not allow for contribution in the Act itself. And so I think the case out of the Massachusetts Supreme Court, Thomas v. EDI Specialist, would be persuasive to Your Honors for that analysis. Ms. Morgan, I want to take you back just a moment. Yes, Your Honor. Okay, let's say that you hadn't settled with, and is it pronounced Havas? Havas. Havas, okay. Let's say you hadn't settled with Havas and you went to trial. What elements would you have had to approve so that there would be, so that some sort of liability would attach to the plaintiff's employer and your clients could recover? Hostile work environment. Hostile work environment elements, Your Honor. That Havas created and fostered a severe and persuasive hostile work environment and subjected their employees to that, such that a reasonable person would no longer be able to be employed by Havas. Would you have a problem, you suggest in your brief, that appellants have never asserted any claims against Havas sounding in tort? Yes. Do you have a problem with that? Do I have a problem with that assertion? Well, would you have a problem with that if your first complaint that you filed actually charges negligence against? The first complaint we filed does not charge negligence against Havas. Well, that's what your opponent said in a response. Hold on. And if there is a suggestion of a breach of a duty in your first complaint at any time, a breach of a duty to prevent the sexual assault of these employees, would you have a concern about that? It's not a breach of a duty to prevent a sexual assault. That breach of duty and those elements, duty breach causation and damages, those apply to the negligence supervision and retention cases that we have against Orbitz. I'm talking about your complaint. Yes. Your initial complaint. Our initial complaint does not charge Havas with anything at all, other than one count per plaintiff brought under the HRA for hostile work environment sexual assault. You're saying your original complaint? Yes, ma'am. Okay. And the only complaint that's ever been filed against Havas. When Orbitz made that statement in their briefing in response to Havas' motion for GetFaithFinding and dismissal, that assertion was wholly incorrect. The plaintiffs have never asserted, have never pleaded any causes of action against Havas for negligence. But potentially, couldn't you have filed complaints or made claims that would have sounded in tort? For example, that Havas sort of negligently retained this client, having knowledge that this client had dangerous employees that could expose your plaintiffs to damages. We don't believe so, Your Honor. Who hired who? I think we need to clear that up. Did Havas hire or whatever, how do you pronounce that? Orbitz. Or did Orbitz hire Havas? Orbitz hired Havas. Okay. Havas was hired to provide media services to Orbitz Expedia. The plaintiffs were working for Havas. They were assigned to the Orbitz contract. Ramses Meyer, who is the offending employee who committed the rapes, was employed by Orbitz, not by Havas.  They didn't hire him. They didn't supervise him. They didn't retain him. They did have control over the client relationship. They wanted to keep Orbitz as a client paying those big marketing bills, right? Correct. Okay. So I want to just switch over to in what ways do you believe the injuries to the plaintiffs caused by Havas and Orbitz are different injuries? Yes, Your Honor. They're different injuries because they are injuries to the plaintiff's constitutional right to be free from harassment in the workplace versus the injuries that Orbitz created by negligently retaining and supervising Ramses Meyer and subjecting the plaintiffs to his behavior knowing that he had a propensity for such misconduct. But the pain and suffering that your clients experienced, that was the same injury caused by both of these people, correct? We disagree because the pain and suffering caused by Havas relates to a greater issue of the hostile work environment. The pain and suffering caused by Orbitz relates to its failure to police the actions of its employee. And what were the actions, though, that gave rise to this, the allegations of sexual assault? So what we pleaded in the original complaint was that there was an overarching hostile work environment that existed at Havas. That environment fostered individuals like Mr. Ramses Meyer to come into the workplace and prey upon the plaintiffs. And was there ever an allegation of injury as a result of the sexual assaults that occurred? Yes, the plaintiffs were injured as a result of the sexual assaults that occurred. So then I guess you can now go back to the question Justice Walker asked. How are you going to separate that when you pled it? You pled that they were injured in that way. We pled that they were injured by the hostile work environment with respect to Havas. We pled that they were injured with respect to the rapes by virtue of Ramses Meyer. The cause of the injury, not the injury. I think that there's a greater injury caused by Havas than that caused by the rapes. There's a broader injury, I should say, not a greater injury. What are the two major purposes behind the contribution action 100-2C? What are the purposes? Give us the whole overview. That plaintiffs should not be compensated for the same injury more than one time. That's the overarching view of the contribution action. Isn't it to promote settlement? That's the major – that's really what's behind the contribution act. And that the liability for fault, the damages or the amount of money that is provided as a result of injury should be shared fairly and equitably among joint tort feasors. Are those the two purposes that the cases have said over and over again? Among joint tort feasors. Yeah. Among joint tort feasors. I understand your argument. Your argument is that they are not tort feasors at all. Right. And I think you're – I'm sorry, the company that your clients work for, that they are not a joint tort feasor. Correct. And when we look at whether or not – if you find in favor of Orbitz, I think that that would actually hinder the promotion of settlement and resolution. And I say that looking at the U.S. Supreme Court's decision in Northwest Airlines, and I say that looking at Thomas, the EDI specialist. Because when we look at the Human Rights Act, the Illinois Human Rights Act, the legislator created this comprehensive scheme whereby they wanted an employee's claim against their employer to be resolved and satisfied at the agency level. And there is no mechanism at the agency level for Habas to have sued Orbitz. You know, in the Massachusetts case, wasn't the employer trying to seek contribution from its tort feasor employee? He was. Or it was, Your Honor. But in Northwest Airlines, it was a third-party company. The airline was trying to seek contribution from the union because the union had also engaged in the pay negotiations that were the subject of the lawsuit. Well, isn't that – I mean, you could almost say that's almost like a similar relationship. The unions negotiated for – and they were really – the people they represented were employees. But in that Supreme Court case, it's many years away in time. It was decided before there was any Federal Contribution Act. It was decided before most states didn't have codified Skinner. I mean, we didn't – Illinois didn't codify contribution until after the Supreme Court announced it in Skinner. So I don't know how persuasive either of those cases are to this set of facts. Plus, is the Massachusetts Act really the same as ours, not only their contribution but their human rights? Yeah, they are substantially similar. And the Joint Tortfeasor Act in Massachusetts is substantially similar to the Illinois Tortfeasor Act, as is the anti-employment discrimination statute. And the purpose behind the Massachusetts anti-employment discrimination statute is the same as the purpose behind the Human Rights Act, which is to prevent and prohibit workplace harassment. Why do you think the Illinois Human Rights Act is different in how the law should be applied to the Joint Tortfeasor Contribution Act when we compare it to the Illinois Environmental Protection Act like in Brockman? Because those are both statutory schemes, right? Both statute by statute. But the Joint Tortfeasor Contribution Act was applied in Brockman under the IEPA. So why is the Illinois Human Rights Act different than the IEPA? I think that answer to that rests on whether or not you can be potentially liable in tort, which is what Brockman said. It's not whether you are actually liable in tort at the end of the day, but whether at the time of a plaintiff's injury can you be potentially liable in tort. And the difference here that we submit to your honors is that you can't be potentially liable in tort with respect to claims brought under the HRA because the HRA preempts any tort claims for covered employees and covered employers. What do you mean it preempts tort claims? If you look at the MacIovic and Geis cases, where the claims relate solely to causes of action and facts and circumstances that should be brought under the HRA, those claims are not viable at common law and they're dismissed. Well, in the second case, MacIovic, whatever it was, the plaintiff there actually ended up suing in negligence. You're aware of that, aren't you? Yes, of course. The person that she sued initially was actually her boss, and she did make civil rights, or I'm not sure what her actual action was, but then she later sued him directly, alleging assault, battery, because he was the perpetrator. That's absolutely correct, your honor. And what the court found was that her claims for assault and battery were not inextricably intertwined with claims that needed to be brought under the Human Rights Act. And so that's why the court found that those claims weren't preempted by the act itself. But here, the difference is that plaintiffs could not bring those court claims against a boss. They could only bring a claim pursuant to the HRA against her boss. That's the distinction there. And if you're wrong, though, if you're wrong about your limited and, you know, narrow view of what a tort is or that potentially libel and tort, would you agree that your arguments failed? I don't agree, your honor. There are some cases in Illinois that have described a tort as something different than what you're describing it as. Any civil wrong can be, you know, remedied via law or equity. That's absolutely correct, and it doesn't have to be a negligence claim. And that's absolutely correct. But there are several cases in Illinois that look at other theories of liability and they determine whether or not they sound in tort. Like, claims brought under the Dram Shop Act do not sound in tort. Breach of fiduciary claims do not sound in tort. Contract claims, as we know, do not sound in tort. Fraud claims, which actually is an intentional tort, has been found by the Illinois state courts to not sound in tort for purposes of the contribution. But isn't this closer to, like, for example, the Illinois Nursing Home Care Act, in that nursing home residents are often caused pain and suffering by the actions of the employees of the nursing home. And here you have a situation where an employee of a client of your company or of your, of Havas, caused issues, pain and suffering, to your clients. I think it would be... Same type of injuries, you know, pain and suffering, you know, perhaps medical damage done to your clients in the alleged rapes, et cetera. The distinction that I would make there is that in those instances, the nursing home is employing those individuals who are committing the acts. That's different here because Havas doesn't have control over Ramsey's Meyer the way that Orbitz has control over Ramsey's Meyer. We agree that Orbitz and Mr. Meyer are joint tort feasors for purposes of the Contribution Act. And if one of them were to settle prior to the other, that settlement would be subject to the Contribution Act's purviews. The difference here is that Havas doesn't employ Mr. Meyer. So the only claims that we could bring, we couldn't bring assault and battery against Havas. We can bring them against Mr. Meyer. We couldn't bring negligent hiring, supervision, retention, any of those claims against Havas. We could only bring them against Orbitz. Against Havas, because of the HRA's preemption statutes, the claims that we could bring against it must be brought pursuant to the HRA. Were there any claims that Havas could have brought against Orbitz? Common law or statutory or any other kind of civil law? The HRA does not have in its statutory framework any mechanism for Havas to bring a claim against Orbitz, at least at the agency level. But if they had sued and they got a claim against Havas, Havas could always look for a third-party contribution from Orbitz. There's nothing prohibiting that. Havas could have sued perhaps under a breach of contract theory pursuant to the contract that it had with Orbitz, but contract cases do not sound in tort, and that has been decided by the Illinois courts. That's definitional, yeah. Is Meyer still in the court, or is that him? What happened with him? Is he still in the action, Your Honor? Yeah, he is. Okay, all right. That's what I thought. I wasn't quite sure. Anything further? You are going to have some time for rebuttal. No, Your Honor. With that, I'll leave argument for Mr. Warner. All right. Mr. Warner. Thank you, Justices. May it please the Court, Counsel. As Ms. Morgan stated, really the sole issue before the Court today is whether the Joint Contribution Act applies to this action, and specifically the claims against Havas that were dismissed. Well, I want to ask you about the question that I asked Ms. Morgan. You argued, didn't you, that they have alleged negligent actions in their complaint? Yes, and they do allege a negligence theory of recovery. The basis for the claim, statutory basis, is the Human Rights Act. But it is a negligence claim, and I direct the Court to pages C-29, C-32 of the record, paragraphs 18 through 33. Those paragraphs set out a negligence theory of recovery. They allege that Havas knew or should have known of Myers' alleged harassing and abusive conduct, and they had a duty to protect the plaintiff from that conduct. Duty, breach, causation, and damages, right? You got it, Your Honor. Right. All of the elements are there. And People v. Brocklin teaches, and this is an exact quote, liability and tort under the Contribution Act, and it's important to look at the definition of tort that the Illinois Supreme Court uses in interpreting the Contribution Act, not in looking at cases under the Tort Immunity Act and not looking at the Human Rights Act preemption cases. But the Tort Immunity Act, some of those cases, have a pretty broad definition of what a tort is. Exactly. Exactly, Your Honor. A breach of noncontractual duty owed to the plaintiff and includes statutory claims. Yeah. So, and Your Honor, Justice, you don't even need to decide the broader question to resolve this case of whether all Human Rights Act claims are subject to the Contribution Act. But certainly, based upon the plaintiff's own allegations against Tavas and the standards articulated by the people, by the Illinois Supreme Court in People v. Brocklin and other cases, this claim is a, this claim against Tavas in this case was a tort claim within the meeting of the Contribution Act. An intentional discrimination claim under the Human Rights Act, that is an issue for another day. Mr. Warner, I have another question for you. In what way do you believe the injuries to the plaintiffs caused by Tavas and Orbitz are the same injuries? And do you even have to have the injuries be the same? Well, the statute says the act applies to where there's claims based upon the same injury. So I concede you have to have the same injury. But, again, you need to look no further than the plaintiff's own allegations and the original complaint against Tavas and the original complaint against Orbitz and subsequent complaints to see that these are the same injuries. In each instance, plaintiffs were seeking to hold Tavas and Orbitz liable for the impact that Ramsey's Meyer conduct had on them. It's based upon the same conduct, same events, same resulting harms to the plaintiffs. In their briefs, plaintiffs confuse the concept of elements of damages for an injury with the idea of injury. They're saying, well, we recovered what the settlement included, attorneys' fees and lost wages. Those are not common-law damages. First of all, lost wages certainly could be common-law damages. Second of all, those are elements of damages. They're not injuries. The injuries in this case are the same, and I don't see any viable argument otherwise. The cases cited in the briefs, again, where courts had to struggle with whether a settlement of a subject of the Contribution Act were for the same injuries all deal with claims where there were clearly different injuries, such as a wrongful death and survival claim, where one of the injuries being compensated is based upon the harm to the decedent themselves and the other injury is to the heirs who lost the consortium and the decedent. Those are two different injuries. Let me ask you about the complaint. Yes. You referred to their initial complaint, and you set forth where in the complaint they allege a breach, a duty, a breach of the duty and damages, injury and damages. So was that complaint ever amended, and does it matter because of the potentially tortious conduct? The claim was never ‑‑ the complaint was never amended as to Havas. If I recall correctly, the plaintiffs filed an original complaint against all three defendants. They settled with Havas, and then they amended the complaint to eliminate Havas as a defendant, and then due to motion practice, there were subsequent amendments as to the claims against Orbitz after that. When you ‑‑ when there was a request by the plaintiffs for, or actually it must have been Havas, for a good faith settlement, your response was that you had no objection to the finding of good faith, but you did want to have any damages that were ‑‑ that your client was facing be reduced by the amount. Correct. Correct. Is that ‑‑ I mean, how do you ‑‑ or which ‑‑ obviously you argued the purposes of the contribution of the act are satisfied, but you never objected or in any way suggested that this was not a good faith settlement. We do not ‑‑ Orbitz does not contest Havas' position that this was a good faith settlement. We do not contest that. I have a question along those lines as well. In looking at the procedural history of the case, so Judge Jones originally made a finding that the settlement was reasonable and made in good faith, but then he vacated that order. And then I don't believe that language was included in the June 10, 2022 order. And if that's true, what impact does that have for us in our consideration? The way it's set out in the opening brief, there's some confusion about the actual order. Yeah, so procedurally what happened, Your Honor, is that Havas filed their motion initially fairly early on and then didn't notice it up for several months later, until several months later. When Havas noticed up the motion, initially without allowing the party's time to respond because the court thought it was a routine motion, entered the order as originally proposed by Havas. We alerted the court and the court clerk that we did oppose the motion in the entry of the order as proposed. That resulted in the court vacating the motion and then obviously briefing. Vacating the order, you mean? Vacating the order, yes. Vacating the order. And then the parties proceeded to briefing on the issue. And argument. And argument, yes. And then came the June 10, 2022 order. Correct. And that order doesn't contain that motion, right?  I don't have a copy of the order in front of me. Here, it's here. It's in the appendix. It provides Havas' motion for good faith finding and dismissal of third-party complaints granted, which is a little bit confusing, or which is third-party complaint is dismissed with prejudice. The Illinois Joint Tort Feasers Act applies to the Havas settlement. That says the settlement is reasonable and made in good faith. And then Orbitz is entitled to a setup, actually gave a percentage, under the Joint Tort Feasers Contribution Act. And then it said that the time for plaintiff or Orbitz to move for reconsideration stayed until October.  And procedurally, we're in somewhat of a confusing posture for purposes of appeal because, and if you look at the last line, if I recall, the circuit court judge made a 304A finding as to Paragraphs one and three. Yeah. The dismissal of Havas and to the finding that the Contribution Act applies. But because it was an issue only between the parties who were still litigating, the portion of the ruling dealing with the allocation of that settlement and the proportion that would be allocated is not subject to the appeal. And for that reason, was Judge Jones premature in granting 304A language? I mean, first of all, those are all interrelated claims. The amount of the set-off, whether there's a set-off, the amount of the set-off, they're inextricably intertwined because we don't really have the other. Right? And then, of course, we also have the issue that Orbitz hasn't been found liable for anything. There's no judgment. So was it premature for him to have granted this 304A language at this time? In fact, was it a final order as to one claim? Your Honor, that is not an easy question to answer. I could see an argument either way from the standpoint of it is somewhat unusual that the parties arguing this appeal are parties that are still happily litigating the case. Can a trial court determine the applicability of the Contribution Act absolutely before any settlement trial or any liability finding? Yes, the circuit court can do that and did do that, at least in part, in this case. Now, from Orbitz's perspective, after Havas and the plaintiffs asked for the 304A finding, we really had no option other than to pursue the defense of the appeal. Now, the other issue from Orbitz's perspective that we're dealing with is, and it wasn't really addressed in the briefing before this court, but there is case law saying if the non-settling defendant does not raise the issue of whether a settlement was in good faith and the allocation of a set-off at the earliest possible time, and they wait until trial, they arguably waive that issue. So we needed that. Orbitz needed to litigate that issue and get a decision on both the good faith finding and the allocation at the time of Havas' dismissal. And Orbitz, as a defendant, couldn't wait until trial to have that issue resolved. Your Honor, getting back to the merits issues in this case, plaintiffs rely heavily on Geis and Maximovic in support of their arguments that these are not, that the claims against Havas are not tort claims. As indicated in Orbitz's briefs, those claims have nothing to do with the Joint Contribution Act and what the definition of a tort is for purposes of the Joint Contribution Act. Even so, even if you somehow try and take the reasoning of Maximovic and apply it to this case, Maximovic teaches that the claims in this case still are tort claims. We've already discussed how the claims in this case allege a negligence theory. Plaintiffs certainly could have pled this as a negligence claim. Illinois courts recognize under common law negligence principles, employers have a duty to exercise reasonable care to protect an employee who comes into a position of imminent danger or serious harm that is known to the employer. That is exactly what they allege Havas did in this case. What are you reading from? This is, and I'll give you a citation. Well, is it in your brief? This is not in our brief. We normally don't let you do that. I can provide supplemental authority, but the case is McDonald v. Hinton, 361 Illap 3rd, 378. So Maximovic teaches if a claim can be articulated as a tort claim, a common law claim, independent of any duty created only by the Human Rights Act, it is not preempted by Maximovic. That's what we have in this case, Your Honor. So even if you rely on or you believe Maximovic has some relevance to the issue before the court, Maximovic says this particular claim is subject to the attribution. She actually had an assault claim against her employer. Had a direct assault claim against an employee of the employer, but there's no substantive difference. I'm not distinguishing it. Yeah, yeah, yeah. I'm just letting you know. Whether the assault claim was. There was, there's absolutely no question there was an assault claim there. Correct, correct. And in some respects, Maximovic is a harder claim because the entire, you know, the entire issue was within the employment relationship as opposed to seeking, trying to impose liability on a boss based upon conduct of a third party. Briefly addressing the non-Illinois cases, the Massachusetts Contribution Act and the manner in which the Massachusetts Supreme Court has interpreted their Contribution Act statute has no applicability to Illinois law. And we know that because what the Massachusetts Supreme Court relied on in the decision cited by the plaintiffs is that workers' comp claims in Massachusetts are not subject to the Massachusetts Contribution Act. That's not the case in Illinois. No, absolutely not. So whatever Massachusetts does has no relevance to what Illinois law provides. Similarly, the federal cases cited by plaintiffs, those cases dealt with the sole issue of whether Title VII of the Civil Rights Act itself has an implied right of contribution. We don't need to address here whether the Human Rights Act has an implied right of contribution because the Contribution Act has an explicit statutory right, and that's what we're relying on in this case. If there are no more questions, I will cede the remainder of my time. All right. Thank you. All right. Ms. Morgan, you may answer. Thank you. Go ahead. I'd like to begin because there's been a great deal of discussion about the original claims that we brought against Havas and whether or not those claims pleaded negligence. And Mr. Warner pointed, Your Honors, to paragraphs 18 through 33 of the original complaint. And if you look at those paragraphs back when you have the appellate record in front of you, what you will see is that they did not plead the elements at all of negligence, duty, breach, and causation or of duty, breach, causation, and damages. What they pleaded, Your Honors, was sexual harassment and hostile work environment under the Human Rights Act. Specifically, we said that Havas engaged in unlawful employment practices by creating a hostile and sexually charged harassing environment. This was not at all limited to the conduct of Ramses Meyer. In fact, in those paragraphs that Mr. Warner cited to you, Mr. Meyer is mentioned in maybe one of them. What we actually pleaded was the work environment as a whole that Havas created for all of its employees, including the plaintiffs, that they had inadequate sexual harassment policies, procedures, and training, that they Was there a duty to have them? Is that what you're saying, ma'am? We're saying that the Human Rights Act created a duty for employers to prevent the sexual harassment of the employees. That duty was created by the Human Rights Act. It didn't exist at common law, especially not for the actions of a third party. The Attribution Act is not limited to actions at the common law. You would agree with that, would you not? I agree, but there are cases in – I agree with that as a general practice. I don't agree with that here with the Human Rights Act. And there are several instances that we've gone over where the court has found that certain causes of action do not sound in tort, for purposes of contribution and for tort immunity. And I think if you look at the Dram Shop Act cases actually in Illinois, they would be illustrative of this point because – But how do you reconcile that with Brockman and the other case that decided that the Workers' Comp Act was stoical? Yes, Your Honor. That's because of the potentially sounding liable and tort at the time in the plaintiff's injury. Brockman is negligent contamination. The individuals responsible for the site were negligent in how they supervised the site and the site was contaminated as a result. Doyle was a personal injury auto accident. And in that case, what the Doyle court found when they went through that analysis was that the Workers' Compensation Act is not a preemption statute at all. It differs from the HRA. The Workers' Compensation Act is an affirmative defense. It does not have to be brought in by the defendant employer. And unless and until it is, the claims by the employee against the employer for negligence stand on their own. And there are instances where the employer decides not to bring in the affirmative defense. And that's why when the Doyle court looked at it, they found that the claims potentially sounded in tort at the time of the plaintiff's injury the same as with Brockman. The difference here is that the plaintiff's claims never potentially sounded in tort at the time of the injury or at any time thereafter. Can a civil rights violation be a tort? A civil rights violation under the HRA, one that falls squarely within the defining terms of the HRA, which is what we submit we have here, cannot be a tort. And if you look at our pleadings, we did not plead it as a tort. We pled it as a hostile work environment under the IHRA. Aren't there cases, though, that say it doesn't really matter how you plead it? That there can be different allegations, but that's not really what the focus is. It's really whether there's potential for tort liability. That's absolutely correct, Your Honor. That's absolutely correct, Your Honor. And that's what we submit as differing here than from Brockman and Doyle. In those cases, at the time of the plaintiff's injury, there were causes of action that could potentially sound in tort. In Doyle, it sounds in tort until the affirmative defense is pleaded. And in Brockman, it was a negligent contamination, and negligence sounds in tort. Here, the duty arises only by virtue of the HRA. Right, and that's why I say that it's akin to the Dram Shop Act, because in Illinois, prior to the Dram Shop Act, there was no cause of action at common law or at any other statute or otherwise that imposed liability on an establishment that provides alcoholic beverages to a patron. The Dram Shop Act then came in and imposed that liability. And when the courts then came to look at whether the Contribution Act applies to the Dram Shop Act, they found that it didn't because those underlying claims do not sound in tort. And that's the argument that we're making here with respect to the HRA. The underlying claims don't sound in tort. The duty was created by the HRA, and Havas' liability, unlike some of these other cases, there isn't another theory that could have been pleaded against them at the time. There wasn't a viable theory against Havas other than the HRA account. Right, and everything, though, at the end of the day depends on whether or not we conclude that actions under the Human Rights Act are not torts or potentially tortious activity. That's really, I mean, what this whole thing boils down to. I think that's what this whole thing boils down to. I think that there is some distinction here, too, because the individual who committed the act, right, is a third party that Havas doesn't have any control over. Mm-hmm. All right. Anything further? No, Your Honors. Thank you. Thank you both. Thank you. For your arguments today. They were well-argued and well-briefed. And we will take this matter under investigation.